OSCAR DAVIS, as Administrator of the Estate of ROBERT F. DAVIS, Deceased, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31340.)

Third Department, December 16, 1954.

*John J. Nicit* and *Theodore C. Bonney* for appellant.

*Nathaniel L. Goldstein, Attorney-General (John R. Davison* and *Wendell P. Brown* of counsel), for respondent.

BERGAN, J. On December 2, 1951, decedent was driving a tractor-trailer unit heavily loaded with rolled steel near Norwich in a northerly direction on Route 12 and came in collision at the intersection of Route 320 with another vehicle. The accident caused decedent's death.

The theory of liability against the State suggested by the claimant is that there was a failure by the State to " afford an adequate sight distance " at the intersection to the driver of the vehicle which was turning out of Route 320 left into Route 12 at the time of collision. The Court of Claims has entered judgment dismissing the claim after a trial.

The place of accident is a " T-type " intersection in which Route 320 connects from the east with Route 12, but does not cross it. Looking in the direction of Route 12 from Route 320 as the driver of the other vehicle was approaching it, Route 12 appears from the photograph of the scene to be in plain sight and the pavement of Route 320 widens out in both directions to meet the pavement of Route 12. In addition to this clearly visible intersection in approaching Route 12 there was a " T " intersection sign; nearer to the intersection, a Route 12 sign with a right and left arrow; and sixty-five feet from the intersection there was a through-traffic " Stop " sign.

There were painted stop bars and a " Stop " sign on the pavement close to the line of Route 12. The approach to the intersection in the direction decedent had been coming on Route 12 was also marked by appropriate signs. In the area formed by the southeast angle of the roads as they came together was a restaurant, but it is not claimed that the building itself was a factor of visibility in causing the accident.

Claimant's case rests upon interference with the vision of the driver who came into the intersection from Route 320. This interference is claimed to have been caused by two maple trees twenty-four inches in diameter and twenty-four feet apart, standing in front of the restaurant. These grew between the restaurant and the road, seven and one-half and eight feet respectively

from the pavement. Interference with vision is also claimed to have been caused by two cars said to have been parked side by side north of the trees and " close to the highway ".

The driver testified that he was " prevented " from seeing " for hardly any distance to the south " because of the " two cars parked close to the highway "; because the two trees obstructed his view " somewhat "; and because " it was hazy anyway ". In order of sequence he placed the haziness first as a reason why he could see " Practically nothing ".

The restaurant was not open at the time of the accident; there is proof to suggest rather strongly that both before and after the accident no cars stood along the side of the road " near the pavement " in the position described and the court did not find the presence of any such cars.

If they were there and their presence contributed to the collision we are at a loss to attribute to the State a legal responsibility for their presence or for such an effect of their presence on the action of the driver entering the intersection.

There is testimony that trucks parked " in front of " the restaurant; and " at times " there " would be some " vehicles that " would be parked between the trees and the east edge of the highway "; that " Numerous times " there " had been cars parked in front of the restaurant "; and that there " had been cars " parked north of the maple trees. One witness said that he had seen " the " time when there were two or three trailer trucks parked in front of the restaurant " and you couldn't see at all ". There is no proof of any detailed notice of this practice coming to State authorities, but there is proof that a State engineer had been told of two complaints to a Sheriff that trucks had parked and reduced visibility.

The appellant's brief pursues the argument from all this that while the State had not been apprised of the " exact location where cars were customarily parked " or that cars had been parked side by side north of the trees where it is claimed the cars contributing to this accident were parked, if the State had made " a survey " of visibility following the statement of the Sheriff that two complaints had been received by him, such a survey would have had to be made " with parked cars singly and in combination in all sorts of possible places along the shoulder in the vicinity of those trees. The two-car combination as testified to by Post [the other driver] was one of those possibilities."

We assume that this means a general survey would have advised the State of such a strong possibility that two cars would

be parked in combination north of the trees that the State should be held liable both for their being there and their effect on the driver's range of vision and hence for the resulting accident.

There is before us no such clear or positive proof that the Court of Claims was bound to accept either that at the time of accident there were cars parked side by side along the highway so as to constitute the limitation of vision on which the structure of claimant's case rests; or that the State had notice of definitely described parking causing such a limitation on vision that would require the State to act to correct the parking of vehicles near the restaurant at the risk of liability.

We are not here dealing with the limiting effect on visibility of a permanent structure. An intolerable burden would be cast on public authority if a liability against the State arose because two drivers place private vehicles in a position near a State highway in an odd combination to create a vision hazard to other drivers.

No Government maintaining a highway system should be required to assume full responsibility for the carelessness of drivers in creating dangers in limitation of view, not by permanent obstructions, but by the evanescent movement and grouping of vehicles. Moreover, the Court of Claims was not required on this record to find that if the cars had been parked as contended by appellant they played any effective part in the occurrence of the accident.

Certainly no liability ought to be imposed on the State for this collision because two twenty-four-inch maple trees stand twenty-four feet apart at seven and one-half to eight feet from the pavement and would thus come within the vision of a driver as he approached the intersection and drove out into Route 12.

The photographs, especially claimant's Exhibit 14 and the State's Exhibit J, demonstrate a situation duplicated at countless intersections throughout the State and we see no imperative duty resting on the Court of Claims on this record to find either that the State should have removed the trees or that their presence had anything to do with the accident.

These trees, individually, or in the theoretical grouping in which the claimant's expert witness placed them, take up a small place in the totality of the scene and of the visibility available to a driver looking south from the intersection into Route 12 and their slight trunks manifestly offer no real block to the flow of sight on each side of them and even between them.

We conclude, then, that the finding of the Court of Claims that the State was not negligent in the occurrence of the accident

is within the weight of the evidence; and we are satisfied as well with the other findings of fact made by the court.

The judgment should be affirmed, without costs.

Foster, P. J., Coon, Halpern and Imrie, JJ., concur.

Judgment affirmed, without costs.